IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHADWICK CARROLL,

     Plaintiff,

                                 6:13-cv-001189-PK

                                 OPINION AND
v.                                 ORDER

CAROLYN W. COLVIN,
Commissioner of Social Security,

     Defendant.

PAPAK, Magistrate Judge:

     Plaintiff Chadwick Carroll ("Carroll") seeks judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have considered all of the parties' briefs and all of the

evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482

2 – OPINION AND ORDER

U.S. at 141.   If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record.  *See* 20 C.F.R. § 404.1520(e).  The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments.  *See* 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p, 1996 WL 374184.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv).  If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv), 404.1520(f).  In the event the claimant

3 – OPINION AND ORDER

is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The Court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882;

4 – OPINION AND ORDER

*see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in January, 1968, Carroll was 40 years old on the alleged onset date of October 21, 2008.  Tr. 21, 101, 148.[1]  He protectively filed an application for DIB on March 13, 2009, alleging disability due to pancreatitis, diabetes, Cushing's syndrome, Addison's syndrome, glandular disorders, detached retina, and history of blood clots.  Tr. 168.  After his applications were denied initially and on reconsideration, Carroll requested a hearing before an ALJ.  Tr. 115-17.  He appeared and testified before ALJ Marilyn Mauer on December 22, 2011.  Tr. 37-100. Carroll was represented by attorney Robert Carlson at the hearing.  Tr. 39.  Medical expert Michael Bloom, M.D., testified by phone, and the ALJ also heard testimony from impartial vocational expert Jaye Stutz.  Tr. 42-53,

Carroll speaks English and has a bachelor's degree in biological sciences from Oregon State University.  Tr. 64.  He has past work experience as a certified nursing assistant ("CNA") for ten years, as a seed sorter, and as an electronics assembler.  Tr. 91-92.  Carroll last worked in October of 2007 doing pen production for computer printers.  Tr. 64.  He testified that he was unable to return to work because of stress and vision problems.  Tr. 65.

In December, 2008, Carroll was hospitalized for acute necrotizing pancreatitis.  Tr. 260. In 2011, he underwent surgery to repair an infected ventral hernia mesh.  Tr. 887-88.  The surgery was completed without complications.  *Id.*  Carroll is able to take care of his own personal hygiene; his activities of daily living also include going for walks and attending church

5 – OPINION AND ORDER

regularly. Tr. 177. 179-81. Carroll testified that he has trouble manipulating and seeing very small objects, but that he can otherwise see reasonably well. Tr. 66. He needs to lie down and rest daily due to muscle pain, and about once every six months he is totally incapacitated due to muscle pain. Tr. 25, 88.

On May 4, 2012, ALJ Mauer issued a decision finding Carroll not disabled. Tr. 18-30. The Appeals Council denied Carroll's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6; *see* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). Carroll now seeks judicial review of that decision.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Carroll had not engaged in substantial gainful activity since the alleged onset date of October 21, 2008. Tr. 23. At the second step, the ALJ found that Carroll had the following severe impairments: ventral hernia status post failed repair; status post adrenalectomy for Cushing's disease; poorly controlled diabetes mellitus type II; Addison's disease; blindness of the right eye; hearing loss; and treatment with anticoagulant therapy. *Id.* Because Carroll's impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis. Tr. 23-24.

At the third step, the ALJ found that none of Carroll's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 24. The ALJ therefore conducted an assessment of Carroll's RFC. *Id.* She found that Carroll could perform sedentary work with the following limitations: he cannot perform jobs requiring excellent depth perception; he requires the option to sit or stand at will while still performing essential job tasks; he can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, crouch,

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed

crawl, balance and kneel; he can always perform tasks that require simple reasoning that can be learned in 30 days or less; he can occasionally perform more complex tasks; he can have only brief, occasional public contact; he cannot work in an environment with more than moderate noise level unless hearing protection is provided; and he can have no more than occasional exposure to hazards and extremes of temperature and humidity. *Id.*

At the fourth step of the five-step process, the ALJ found that Carroll is unable to perform any of his past relevant work. Tr. 28. At step five, the ALJ determined that Carroll could perform jobs that exist in significant numbers in the national economy including toy stuffer, polisher of eyeglass frames, and buckle wire inserter. Tr. 29. The ALJ therefore concluded that Carroll was not disabled. Tr. 30.

## ANALYSIS

Carroll argues that the Commissioner erred because he (1) improperly rejected the medical opinion of David Cook, M.D., and (2) improperly rejected his credibility.

## I.    Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of treating, examining, and non-examining physicians. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). It is legal error to ignore an examining physician's medical opinion without providing reasons for doing so, and an ALJ effectively rejects an opinion where he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Carroll argues that the ALJ improperly rejected the medical opinion of treating physician David Cook, M.D. Pl.'s Br. 6. Dr. Cook was one of Carroll's treating physicians for 15 years. Tr. 1312. On December 16, 2011, he completed a questionnaire regarding Carroll's symptoms and limitations. Tr. 1312-16. Dr. Cook opined that Carroll suffers from fatigue, difficulty walking, episodic vision blurriness, muscle weakness, retinopathy, loss of manual dexterity, difficulty thinking and concentrating, and hyper/hypoglycemic attacks. Tr. 1312. Dr. Cook stated that Carroll was incapable of performing even "low stress" jobs, and that he could sit for less than two hours and stand for less than two hours in an eight-hour day. Tr. 1313. Dr. Cook also opined that Carroll has significant limitations in reaching, handling, or fingering, and can only use his hands and fingers for grasping, fine manipulation, and reaching for 10 percent of an eight-hour day. Tr. 1315. He concluded that Carroll would be absent from work about four days per month due to his conditions and limitations. *Id.*

The ALJ assigned little weight to Dr. Cook's opinion. Tr. 27-28. She noted that Dr. Cook's opinion was "inconsistent with other substantial evidence in the record." Tr. 28. In contrast with Dr. Cook's findings, state agency physicians Neal Berner, M.D., and Martin Kehrli, M.D., both found that Carroll has no manipulative limitations. Tr. 707-11, 875-82. The ALJ was thus required to provide specific, legitimate reasons for rejecting Dr. Cook's controverted opinion. *Lester*, 81 F3d at 830.

The ALJ provided at least three specific, legitimate reasons for rejecting Dr. Cook's opinion. First, the ALJ found that Dr. Cook's opinion was "unsupported by medically acceptable clinical and laboratory diagnostic techniques." The ALJ need not accept a physician's opinion that is brief, conclusory, and inadequately supported by clinical findings, *Bayliss*, 427 F.3d at 1216, and may reject a physician's conclusions that are not supported by his own treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, Dr. Cook opined that Carroll has limited hand dexterity, but does not appear to have tested Carroll's grip strength or manipulative ability. *See* Tr. 27, 1131. Dr. Cook also opined that Carroll could sit for less than two hours and stand or walk for less than two hours in an eight-hour workday, and that he would be absent from work about four days per month (Tr. 1313, 1315), but did not provide supporting evidence of these limitations in the form of diagnostic notations or other treatment notes. On this record, the ALJ properly rejected Dr. Cook's conclusions regarding Carroll's limitations because they were not supported by his own treatment notes. *Connett*, 340 F.3d at 875.

Second, the ALJ found that Dr. Cook's opinion was inconsistent with Carroll's hearing testimony. Tr. 28. The ALJ may reject a physician's opinion when it is inconsistent with a claimant's statements. *Morgan v. Comm'r*, 169 F.3d 595, 602-03 (9th Cir. 1999). At the

9 – OPINION AND ORDER

hearing, Carroll testified that his pain was managed using only Tylenol, and that he had not requested any medication for pain from his treating doctors. Tr. 76. It was reasonable to infer that this testimony conflicts with Dr. Cook's finding of limitations so severe as to cause Carroll to miss work four days per month. The ALJ was entitled to resolve this conflict by rejecting Dr. Cook's opinion. *Morgan*, 169 F.3d at 602-03. The ALJ also noted Carrol's testimony that he has bad days where his pain is so intense that he must lie down for longer than two to three hours only "about once every six months or so." Tr. 88. The ALJ found this testimony to be inconsistent with Dr. Cook's opinion that Carroll will miss work about four days per month. Tr. 28. This inconsistency provides further support to the ALJ's rejection of Dr. Cook's opinion. *Morgan*, 169 F.3d at 602-03.

Carroll argues that the ALJ misinterpreted his testimony regarding "bad days" and therefore erred in rejecting Dr. Cook's opinion for this reason. The Court disagrees. As noted, Dr. Cook opined that Carroll would miss work about four days per month due to bad days, and Carroll testified that he has to lie down between one and two hours every day due to pain but does not experience bad days as regularly as four times per month. Tr. 75-76, 1314. While Carroll offers an alternative interpretation of the evidence, the Court upholds the ALJ's rational reading of the record. *Magallanes*, 881 F.2d at 750 (if the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation.").

Third, the ALJ rejected Dr. Cook's opinion as inconsistent with the medical opinion of treating physician Kevin Yuen, M.D. Tr. 1321. The ALJ may reject a physician's opinion in order to resolve an apparent conflict in the medical record. *Tommasetti*, 533 F.3d at 1040; *Carmickle*, 533 F.3d at 1164. Dr. Yuen indicated that Carroll's conditions cause tiredness in the

10 – OPINION AND ORDER

evenings and advised that Carroll cannot undertake strenuous lifting and physical activity. *Id.*
Dr. Yuen's opinion documents limitations less severe than those assessed by Dr. Cook, and
supports the ALJ's finding that Carroll can perform sedentary work. *See* Tr. 28, 74-75, 79-80.
On this record, the ALJ provided legally sufficient reasons for rejecting Dr. Cook's opinion.
*Tommasetti*, 533 F.3d at 1040. The ALJ's evaluation of the medical evidence is affirmed.

## II.    Plaintiff's Credibility

Carroll also argues that the ALJ erred by rejecting his subjective symptom testimony. In
assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of
symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ
determines whether there is objective medical evidence of an underlying impairment that could
reasonably be expected to produce some degree of symptoms. *Smolen*, 80 F.3d at 1282. If such
evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and
convincing reasons for discrediting the claimant's testimony regarding the severity of the
symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036. If the record contains
affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons
for an adverse credibility finding. *Morgan*, 169 F.3d at 599.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1)
ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior
inconsistent statements concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or
to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*,
533 F.3d at 1039. Where the ALJ's credibility findings are supported by substantial evidence in
the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278

11 – OPINION AND ORDER

F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

The ALJ rejected Carroll's statements regarding his symptoms and limitations. First, she noted that Carroll stopped working for reasons other than his alleged disability. Tr. 25. The ALJ may disregard subjective pain testimony where the claimant stopped work due to reasons other than the alleged disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding that the ALJ properly rejected testimony of claimant who left his job because he was laid off). Here, the ALJ noted that Carroll stopped working in 2007 because he was laid off, not due to his allegedly disabling conditions. Tr. 25, 68. The ALJ was entitled to reject Carroll's subjective symptom testimony on this ground. *Bruton*, 268 F.3d at 828.

Second, the ALJ noted that Carroll used conservative treatment to treat his muscle pain. Tr. 25. When a claimant receives minimal or conservative treatment for his allegedly debilitating symptoms, the ALJ may draw an adverse inference as to the credibility of his claims. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). The ALJ noted that Carroll testified that he takes Tylenol only occasionally and that "no pain medication has been recommended, nor has he requested any medication for pain." Tr. 25, 76. This evidence of conservative treatment provides support to the ALJ's finding that Carroll's allegations of physical limitation due to pain were not credible. *Parra,* 481 F.3d at 750-51. Evidence of Carroll's conservative pain treatment also provides grounds to reject Carroll's testimony that he must lie down for 1-2 hours each day due to pain. *Id.*

12 – OPINION AND ORDER

Third, the ALJ found that Carroll failed to comply with treatment prescribed for managing his diabetes. Tr. 25-26. Failure to comply with a prescribed treatment regimen is a relevant credibility consideration. *Smolen*, 80 F.3d at 1284. For example, the ALJ found that in "February 2009, Mr. Carroll was still not following the recommended diabetic diet and his glucose levels had increased." Tr. 26, *citing* Tr. 350, 473, 489 (noting increase in glucose level due to diet), 691 (noting high glucose levels due to failure to watch diet). Carroll's failure to adhere to a proper diabetic diet regimen provides further support for the ALJ's credibility determination. *Smolen*, 80 F.3d at 1284.

Finally, the ALJ found that Carroll's testimony was controverted by the medical evidence. Tr. 26. Conflict with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. *Carmickle*, 533 F.3d at 1161. At the hearing, Carroll testified that poor eyesight prevented him from working. Tr. 65. Carroll's treating doctor, Julie Falardeau, M.D., found that Carroll has 20/30 vision in his left eye and some restriction of visual field. Tr. 841-43. She opined that Carroll's vision impairment did not meet a listing and was therefore not disabling. Tr. 26, 1322-23. The ALJ reasonably inferred that Dr. Falardeau's opinion contradicts Carroll's testimony regarding the severity of his eye impairment. The ALJ thus provided further support for her credibility finding. *Carmickle*, 533 F.3d at 1161. On this record, the ALJ provided legally sufficient reasons supported by substantial evidence for her credibility finding. The ALJ's decision is therefore upheld.

13 – OPINION AND ORDER

**CONCLUSION**

The ALJ's decision finding Carroll not disabled is supported by substantial evidence in the record and is therefore affirmed.

Dated this  18th day of August, 2014.

Honorable Paul Papak
United States Magistrate Judge

14 – OPINION AND ORDER